Mr. Bennett. Thank you, Your Honor. May it please the Court, my name is James Todd Bennett, again appearing for the petitioner appellant in this case, Mr. Ramon Gamapuja. I'd like to reserve three minutes rebuttal, if I may. Initially, this case arises once again under the Real ID Act. And we have, initially, the problem raised by the government is one whether or not this is a Laura Torres-type action. In other words, you've been put in proceedings, and at the end of the day, there's nothing at the end, so what's the point? In this particular case, what distinguishes this case is that the counsel in this case filed this I-589, and apparently the counsel's focus in filing the I-589 was to simply trigger a removal proceeding to apply for relief, which Mr. Pugha, apparently at the time of the fact of filing it, was not even eligible for, due to the absence of extreme and unusual hardship, which is not reviewable and essentially has a very high bar, even under the administrative conditions then. What is different in this case from Laura Torres is that in the claim, counsel states in the I-589 that he has an inability to make a living in Mexico. Well, that's a cognizable claim, at least a colorable claim, under Bebala in this circuit as to economic persecution and the inability to make a living. Let me ask a question about that, on the question of a colorable constitutional claim. In Laura Torres v. Gonzalez, we held that a similar strategic decision by counsel did not amount to a due process violation for ineffective assistance of counsel. What is your response to that? Our position in this case, Your Honor, what distinguishes this from Laura Torres is that there actually was a withdrawn form of relief that was actionable and could have been tried. Instead, counsel withdraws it the first day she's in front of the immigration court, Judge. Now, Laura Torres, there was no relief at the end, as I understand the case. I'm not familiar with the facts, but reading the opinion, there's nothing at the end of the day, so why even bother to go through this procedure? Thank you. Now, procedural issue in this case, I'd like to address that as well. The petition for the – there was a previous petition for review in this case, which was dismissed for lack of jurisdiction on the issue of the 120 – under the Cancellation Statute 129a, b, 1d, which has the extreme and unusual hardship, only reviewable under Romero if there's an abuse of discretion. After the petition was – after this administrative record was produced and the government brought a motion on the grounds of dismissal, and the case was ultimately dismissed, what happened in the interim, however, the Real ID Act was enacted, and at that point, any claims, including the claim under Baybala or any ineffective assistance to counsel claims in proceedings could have been heard in that petition for review, but instead it was dismissed. So we have the petition for review proceeding, what is the remedy for Mr. Puja at that point? The remedy he pursued in this case was a habeas corpus petition because there is no other avenue for him to pursue because of the dismissal of the previous petition for review after the enactment of Real ID Act. The – in addition to that, the question of whether he should have pursued a motion to reopen becomes at this point in history an impossibility because he has, in fact, been removed. So in the absence of any jurisdiction to pursue a motion to reopen, the question is, in the absence of his presence in the regulations of the BIA, there's no grounds whatsoever for a motion to reopen. It would be futile to file it since he's not physically present in the country, unlike this Court or any Article III court, which would not lose jurisdiction under those circumstances. You have jurisdiction to consider the appeal, but the BIA has no jurisdiction to consider a motion to reopen. How long after the final decision did he leave the country? I believe that was in October of 2005. I'm sorry, Your Honor, 2006. And that was pursuant to – that was the execution of the order. Now, so in the absence of any kind of administrative remedy, the issue is whether he has – there's habeas jurisdiction under this particular scenario to raise the issue and – or any alternative, as an alternative remedy, would be bringing a motion to recall a mandate in the previous petition for review and reinstating the proceeding and hearing the claims in that – in that proceeding as a – and dismissing the habeas. I think those are the two alternative remedies that we would posit in this particular case. Now, I do – exclusive of the – ordinarily, this would be controlled as to the suspension clause. I don't think we get to the constitutional issue, but if we did, Puri would clearly control in this case if we had an adequate administrative substitute or if there was a pure question of law. In this particular case, the administrative substitute is not available because of the removal. And on that basis, we'd be prepared to submit it. Thank you. Your Honor, we would argue that the Petitioner in this case could have raised his ineffective assistance claim in a number of venues, because I think the claim here is that the attorney improperly counseled him to submit this asylum application and apply for cancellation and removal, which he turned out to be ineligible for. And I guess the claim is that the attorney should have – should have calculated or informed him that he would have been ineligible for cancellation and removal. He wouldn't have met the hardship requirements. But we would argue that once the immigration judge ruled, and the immigration judge, of course, as a matter of discretion, denied the cancellation and removal case, well, at that point, if the Petitioner had a claim, he would have known at that point. Well, my counsel has improperly advised me that I would be eligible for cancellation and removal. I am not, because the immigration judge just denied my cancellation application. At that point, we think that he should have made diligent efforts then to present the claim to the board by choosing to have another attorney to do that. So he didn't do that. And no appeal to the – or the appeal to the board that was filed by his counsel just pursued the cancellation claim. We have a – you know, I've never met an attorney except after the fact who says they're ineffective. Sometimes they'll file an affidavit. But he has the same attorney in the administrative proceeding that he does in the BIA, right? So that attorney is not going to say I made a strategic error. Sure. I was more getting at the point that he would have been on notice at that point about the claim. Because his claim is really that he advised me, that led me to think that I was eligible for cancellation. Once the IJ ruled, then he would have, I think, been on notice to pursue. But what if I say I was wrong? Well? So in other words, it raises this issue of why we have habeas in the Federal, you know, in the criminal context, because you go up and what if the BIA had said, well, you're wrong, actually, there's this little loophole and you are eligible, or the court of appeals had said, well, there's this relief. So the question is often they say, well, now you've fired your shots too early because we don't know yet what the final answer is. Yeah. Well, again, we think at that point at least he should have inquired about perhaps, you know, how, what is the strength of my claim. And then regardless, we would, again, just going back to the prior argument we have had, we would say that he should have filed a motion to reopen. Again, Wray, I'll read you Wray says, the Wray decision, the court says, because we find that Wray was denied due process as a result of this attorney's deficient and detrimental performance, we hold that the BIA abused its discretion. So it's reviewing abuse of discretion. We hold the BIA abused its discretion by refusing to toll the numerical and procedural bars to his second motion to reopen. So in other words, here, instead of, he gets the court of appeals decision, I believe in about June, and then he filed his habeas in September, which is a pretty diligent process. But your position is because it related to the administrative proceeding, he should have filed that as a motion to reopen rather than a habeas. That's right, and clearly the court, even though this is out of a motion to reopen, to now motion to reopen abuse of discretion, it's taking review, and it's looking at the underlying due process claim. So we think that this is the procedure that the court can adopt in these cases, even whether the ineffective assistance occurs during the proceedings or outside of the proceedings. The problem I have with that is, it's the same lawyer. He failed to file a motion for reopen. Why isn't he continuing his inadequate representation? Well, at some point, Your Honor, yeah, at some point, that has to stop. And the petitioner, I mean, there has to be finality, I think, in immigration proceedings. At some point, the petitioner would have been on notice to say, okay, well, this counsel has led me through this, and this has not worked. I need to get another counsel, and that's a problem here, because it results in delay, and it can be used as a delay tactic. What we're saying is that if this claim is pursued in some judicial form, then it should be in the Court of Appeals through the administrative agency and not in habeas, where it's a collateral, you know, challenge. And there's then the result of the alien getting two levels of review. It just compounds the problem, I think. In this case, he had Mr. Bennett as his habeas lawyer. So Mr. Bennett obviously recognized the problem with the other attorney's earlier advice, so he had a new attorney in this case, correct? That's true. And, again, we're even presuming that this is ineffective assistance. I think that the Laura Torres decision would question that. So I'm not at all conceding ineffective assistance here. I understand. I think Laura Torres actually disposes of this case in any event on the merits. But as a jurisdictional matter, we again would ask the Court to consider requiring these aliens to go through this agency process. And, you know, the fact that there's no automatic stay available when you file a motion to reopen is exactly part of the scheme that's been set in place, again, to reach some sort of finality. The Board has discretion to grant a stay, sure. And the alien can make his case to the Board that he should have a stay. We agreed with you that the nature of this claim was not a colorable constitutional claim, maybe for different reasons than you might urge, but at least under Laura Torres. Could we come to that conclusion, or would we need to decide jurisdiction first? I think, Your Honor, that you could decide the case narrowly on those grounds perhaps maybe for, as the brief has argued, in our discussion today, but I think by the government for failure to establish a remedy for prejudice. I would point out that the asylum application simply says, due to economic conditions in Mexico, I will not be able to survive there. So there's been no showing that the asylum would be on account, the persecution would be on account of one of the five statutory required factors. So there's no demonstration of prejudice here in this case. The court could issue narrow holding, I believe, on that point. Although we would urge you, though, to affirm the district court's dismissal because district court, obviously subject matter jurisdiction is the first inquiry. And in light of the Puri case, it seems pretty clear that the district court lacked jurisdiction in the case. Thank you. Thank you. Unless there are any questions, I'm prepared to submit it. I think there's no further questions. Thank you again, House Counsel, for your arguments in Gamapuja. The case argued is submitted. We turn to the final case on the calendar, Ringgold v. Garcia.
judges: Wallace, D.W. Nelson, McKeown